UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CHRISTINE WOODWARD,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 15-247-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 9, 2015, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on March 10, 2015, and April 2, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 20, 2015, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on November 26, 1967. [Administrative Record ("AR") at 39, 126.] She has past relevant work experience as a financial service representative and a waitress. [AR at 39, 166-70.]

On February 28, 2011, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since January 13, 2011. [AR at 29, 126.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 29, 89-90.] A hearing was held on April 4, 2013, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 45-72.] Plaintiff's husband also testified. [AR at 65-72.] On May 16, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from January 13, 2011, the alleged onset date, through May 16, 2013, the date of the decision. [AR at 29-40.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 23-24.] When the Appeals Council denied plaintiff's request for review on December 11, 2014 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

2

(same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A. THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability

to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 13, 2011, the alleged onset date.[1] [AR at 31.] At step two, the ALJ concluded that plaintiff has the severe impairments of "degenerative arthrosis of the lumbar spine; status post left sided laminectomy at the L5-S1 as of April 2008; overweight; [and] alcohol abuse with depression." [Id.] The ALJ also found plaintiff's hypertension to be nonsevere [AR at 32], and observed that "[w]ithout alcohol abuse, the claimant's medically determinable mental impairments [sic] of depressive disorder . . . do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and are therefore nonsevere." [AR at 31.] At step three,

---

[1]    The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. [AR at 31.]

4

the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 32.] He also found that plaintiff's mental impairments "caused no restriction of activities of daily living, no difficulties in maintaining social functioning, [and] mild to moderate difficulties in maintaining concentration, persistence, or pace." [AR at 33.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[3] as follows:

> [T]he claimant can lift and/or carry no more than 10 pounds occasionally and frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; the claimant is limited to simple and repetitive tasks.

[Id.] At step four, based on plaintiff's RFC, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a financial service representative and a waitress. [AR at 39.] At step five, based on plaintiff's RFC and vocational factors, the ALJ found that although plaintiff was unable to perform the full range of sedentary work, her "additional limitations have little or no effect on the occupational base of unskilled sedentary work" and, therefore, "[a] finding of 'not disabled' is . . . appropriate under the framework of" Medical-Vocational Rule 201.25. [AR at 40.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 13, 2011, through May 16, 2013, the date of the decision. [Id.]

/

/

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

# V.

# THE ALJ'S DECISION

## A. PLAINTIFF'S CONTENTION

Plaintiff contends that the ALJ erred in his evaluation of the opinion evidence of plaintiff's mental limitations. [Joint Stipulation ("JS") at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

## B. ALJ'S MENTAL RFC ASSESSMENT

At step three, the ALJ found that the severity of plaintiff's mental impairments, considered singly and in combination, did not meet or equal the criteria of Listings 12.04 and 12.09. [AR at 33.] Based on the treatment records, the report of the psychological consultative examiner, and plaintiff's subjective symptom statements, the ALJ found that plaintiff's mental impairments caused no restriction in activities of daily living, no difficulty in maintaining social functioning, mild to moderate difficulty in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. [Id.] Because plaintiff's mental impairments did not cause at least two "marked" limitations, or one "marked" limitation and repeated episodes of decompensation of extended duration, the ALJ found that the "paragraph B criteria"[4] were not

---

[4] "Paragraph B" criteria are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process, while the RFC is assessed between steps three and four. See 20 C.F.R. pt. 404, subpt. P, app. 1; 20 C.F.R. § 404.1520(a)(4); Soc. Sec. Ruling 96-8p. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that the step two inquiry is "a *de minimus* screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Accordingly, "[a]n impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on [a claimant's] ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (citation omitted); see Soc. Sec. Ruling 85-28 (stating that "[a] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*") (emphasis added). The regulations direct an ALJ to find a mental impairment severe when a claimant suffers moderate limitations in activities of daily living, social functioning, or concentration, persistence, or pace, or the impairment has "more than a minimal limitation on [her] ability to do basic work activities." 20 C.F.R. § 404.1520a(c)(4). These four broad categories of functioning
(continued...)

satisfied. [Id. (quotation marks omitted).] The ALJ also noted that his RFC assessment "reflect[ed] the degree of limitation" he found in the "paragraph B" mental function analysis. [Id.]

Plaintiff argues that the ALJ (1) failed to properly consider the findings of consultative examining psychologist Robin Rhodes Campbell, Ph.D., who conducted a complete psychological evaluation of plaintiff on February 23, 2012; and (2) completely failed to address the March 26, 2012, RFC assessment made by Sally Varghese, M.D., who completed a psychiatric review technique form on reconsideration. [JS at 5-6.]

Specifically, Dr. Campbell diagnosed plaintiff with a depressive disorder, anxiety disorder, alcohol abuse, rule out alcohol dependence, and the presence of psychosocial stressors; she assigned a global assessment of functioning ("GAF")[5] score of 66, indicative of mild impairments. [AR at 417.] She opined that plaintiff had moderate impairments in her ability to understand, remember, and carry out detailed instructions, relate to the public, supervisors, and coworkers, and withstand the stress associated with an eight-hour day and day-to-day work activities. [AR at 418.] Dr. Campbell also noted that plaintiff had "depression and anxiety that are essentially untreated," and "appear[s] to be consuming alcohol daily which may exacerbate symptoms of depression." [Id.] Dr. Varghese, the reviewing psychiatrist, considered the report of Dr. Campbell and determined that plaintiff exhibited signs of a depressive disorder, with evidence of sleep disturbance and difficulty concentrating or thinking. [AR at 431.] She found plaintiff had mild difficulties in maintaining concentration, persistence, or pace; moderate difficulties in activities of daily living and in maintaining social functioning; marked limitations in understanding,

---

[4](...continued)
are also known as the "paragraph B criteria" because they generally appear in paragraph B of the Listing. As the ALJ noted, "paragraph B" ratings "are not a residual functional capacity assessment." [AR at 538.] An individual's RFC, on the other hand, is "the most [she] can still do *despite* [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) (emphasis added).

[5] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM-IV"). The most recent edition of the DSM "dropped" the GAF scale, citing its "conceptual lack of clarity" and "questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012).

remembering, and carrying out detailed instructions, and in her ability to interact appropriately with the general public; and no limitations in her ability to understand and remember very short and simple instructions, and in her ability to get along with supervisors or coworkers. [AR at 424-25.] Dr. Varghese concluded in her functional capacity assessment that plaintiff "can perform simple tasks with routine supervision"; "can relate to supervisors and peers on a superficial work basis"; and "can adapt to a work situation." [AR at 426.] Based on the relevant medical evidence of record, Dr. Varghese found that plaintiff can perform simple work. [AR at 440.]

Plaintiff argues that the ALJ "ignores the state agency opinions of Dr. Varghese and the examining opinion of Dr. Campbell." [JS at 22.] Specifically, she contends that the ALJ "did not address, find, or reject [Dr. Campbell's findings regarding] the presence of [moderate] limitations in interacting with the public, supervisors, or coworkers, or in the capacity to withstand the pressure of a normal workday." [JS at 7.] Plaintiff further contends that the ALJ failed to specifically mention Dr. Varghese's findings that plaintiff was precluded from interaction with the general public.[6] [JS at 8.] She argues that the mental limitations found by Dr. Campbell and Dr. Varghese "have a significant impact on [her] ability to perform critical demands of unskilled work." [Id.] She also states that "[u]nskilled work requires the critical functions of asking simple questions, requesting assistance, accepting instructions, and responding appropriately to criticism

---

[6] The Court notes that reviewing psychologist, Hillary Weiss, Ph.D., opined on June 20, 2012, that plaintiff was capable of "CPP [concentration, persistence, or pace] for simple tasks w/LPC [limited public contact]." [AR at 447.] Although the ALJ referenced this exhibit in his review and consideration of the consultative examiners' reports [AR at 37 (citing AR at 480-81 (Ex. 19F, Dr. Weiss' report))], and it was among those reports to which he gave "significant weight, but not full weight," he did not otherwise specifically discuss this report in his decision. [See AR at 37-39.] Moreover, plaintiff submitted to the Appeals Council for review, a September 7, 2013, statement from her treating physician, Keith Shillito, M.D., in which Dr. Shillito opined that plaintiff was moderately limited in her ability to perform work at a consistent pace without more than regular breaks in a workday, interact appropriately with the public, maintain attendance and punctuality during a workday and workweek, sustain an ordinary routine without special supervision, and respond appropriately to changes in a routine work setting. [AR at 481.] He also found her slightly limited in her ability to interact appropriately with supervisors and coworkers. [Id.] This document was not available to the ALJ for his review but must be considered on remand.

from supervisors,"[7] and that the Commissioner failed to address her limitation in interacting with the public "in terms of erosion of the occupational base," or Dr. Varghese's finding that plaintiff's contact with her supervisors and peers was limited to a superficial work basis. [Id.] Plaintiff also contends that because Dr. Campbell and Dr. Varghese "synthesized the worksheet findings of mental impairments into a limitation to superficial contact with supervisors, the [ALJ] had . . . an obligation to explain the weight given to that opinion." [Id. (citing Rounds v. Comm'r Soc. Sec. Admin., 795 F.3d 1177, 1184 (9th Cir. 2015)).]

      Preliminarily, the ALJ did not "ignore" either Dr. Campbell's or Dr. Varghese's reports. In fact, he stated that he had read and considered both reports. [AR at 37 (citing to Dr. Campbell's report at AR Ex. 13F and Dr. Varghese's report at AR Ex. 15F, among others).] He generally gave "significant . . . but not full weight" to the reports of the State agency physicians and consultative examiners, including Dr. Varghese and Dr. Campbell, finding that all of the opinions were "generally consistent in that they all assess the claimant is able to perform simple and repetitive tasks in a range of work at the light exertional level with some differences in the degree of specific function-by-function limitations." [AR at 37 (citing to AR Exs. 4F, 6F, 7F, 13F (Dr. Campbell's report), 15F-17F, 19F (Dr. Weiss' report; see supra note 6).] The ALJ also specifically observed that Dr. Campbell "opined [plaintiff] only has moderate impairment in her abilities to understand, remember, and carry out detailed instructions, relating appropriately to the public, supervisors, and coworkers, and to withstand stress and changes in the workplace in an 8-hour workday." [AR at 39.] The ALJ stated that he gave "significant weight" to the opinion of Dr. Campbell as it was "consistent with the medical records as a whole." [Id.] The ALJ also gave plaintiff "the benefit of the doubt and took into consideration [her] subjective complaints"[8] when he gave her a more restrictive RFC than assessed by the State agency physicians. [AR at 37-38.]

---

[7] Contrary to plaintiff's assertion, however, Dr. Varghese did not find that plaintiff had problems asking simple questions, requesting assistance, accepting instructions, and responding appropriately to criticism from supervisors -- indeed, she found plaintiff "not significantly limited" in each of these functional categories. [AR at 425.]

[8] Plaintiff does not challenge the ALJ's adverse credibility finding. [AR at 34-36.]

9

### 1. Social Functioning

As previously noted, the ALJ gave significant weight to the opinions of Dr. Campbell, Dr. Varghese, and Dr. Weiss. [AR at 37, 38-39.] Although Dr. Campbell [AR at 418], Dr. Varghese [AR at 425], Dr. Weiss [AR at 447], and Dr. Shillito [AR at 481] all found plaintiff had moderate to marked difficulties in interacting with the general public; Dr. Campbell found moderate difficulties in interacting with supervisors and coworkers [AR at 418]; and Dr. Shillito found slight difficulties in interacting appropriately with supervisors and coworkers [AR at 481]; the ALJ generally found that plaintiff had "no difficulties in maintaining social functioning," and did not include any restriction in the RFC relating to plaintiff's ability to interact appropriately with the public, supervisors, and/or coworkers.[9] Likewise, although Dr. Campbell [AR at 418] and Dr. Shillito [AR at 481] both found that plaintiff's ability to withstand the stress and changes associated with an eight-hour workday was moderately impaired, the ALJ did not discuss these findings or provide any rationale for rejecting what would appear to be significant and probative evidence.

While an ALJ is not required to address all evidence presented to him, he must explain why significant and probative evidence has been rejected. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted). "[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that . . . [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster his findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)); see also Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by

---

[9] The Court acknowledges that unskilled work "ordinarily involve[s] dealing primarily with objects, rather than with data or people." Soc. Sec. Ruling 85-15.

10

"not fully accounting for the context of materials or all parts of the testimony and reports"); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

Here, despite the ALJ's assertion that he afforded "significant weight" to Dr. Campbell's opinion, and "significant weight, but not full weight" to Dr. Varghese's opinion, the ALJ failed to explain why he apparently rejected and did not include in the RFC determination Dr. Campbell's moderate limitations in plaintiff's ability to relate to the public, supervisors, and coworkers, and withstand the stress associated with an eight-hour day and day-to-day work activities, and Dr. Varghese's moderate limitations in maintaining social functioning, and marked limitation in plaintiff's ability to interact appropriately with the general public. See 20 C.F.R. § 404.1527(e)(2); Soc. Sec. Ruling ("SSR")[10] 96-8p, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); see Marsh v. Colvin, 792 F.3d 1170 (9th Cir. 2015) (ALJ's failure to "even mention" the treating doctor's notes and opinions was not harmless error).

Remand is warranted on this issue.

/

---

[10] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan, 246 F.3d at 1202 n.1 (internal citations omitted).

### 2. Concentration, Persistence, and Pace

Plaintiff also notes that the ALJ found that plaintiff had mild to moderate difficulties in maintaining concentration, persistence, and pace, and that Dr. Varghese found plaintiff had "difficulty concentrating or thinking."[11] [AR at 5, 6.] Although Dr. Campbell found that plaintiff's concentration and attention were "unimpaired" [AR at 417], and Dr. Varghese found only "mild" impairment in maintaining concentration, persistence, or pace [AR at 438], the ALJ nevertheless made the determination that plaintiff had "*mild to moderate* difficulties in maintaining concentration, persistence, or pace." [AR at 33 (emphasis added).]

Defendant argues that the ALJ's RFC limitation to simple and repetitive tasks incorporates the ALJ's finding regarding mild to moderate limitations in concentration, persistence, or pace [JS at 9-17], and relies on Hoopai v. Astrue, 499 F.3d 1071 (9th Cir. 2007), for the proposition that there is no requirement that limitations in concentration, persistence, or pace, and social functioning "be presented in the RFC finding." [JS at 12 (citing Hoopai, 499 F.3d at 1075-78). Defendant's reliance is misplaced. In Hoopai, the issue before the court was whether the ALJ's finding that plaintiff had severe mental impairments at step two precluded the ALJ from utilizing the grids at step five to find that the plaintiff was not disabled. Hoopai, 499 F.3d at 1076. The court held that "satisfaction of the step-two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." Id. The court held that the ALJ was only "required to seek the assistance of a vocational expert when the nonexertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case." Id. Moreover, in Hoopai, although the Ninth Circuit summarized medical testimony that identified functional non-exertional limitations, including a moderate limitation in concentration, persistence, or pace, the appellate

---

[11] Plaintiff at least superficially raises the issue of whether the ALJ's RFC incorporated his finding that plaintiff had mild to moderate limitations in concentration, persistence, and pace [see AR at 5, 6], and the Commissioner thoroughly discussed this issue. [AR at 15-16.] Because the matter is being remanded for further consideration of the physicians' opinions of plaintiff's social functioning, the Court considers the issue here.

12

court did not indicate that the ALJ had *adopted* any non-exertional limitations. Id. at 1077. Rather, it appears that the ALJ in that case determined that Hoopai's depression did not cause a significant functional limitation. See id. (holding that "substantial evidence supports the ALJ's conclusion that the depression was not a sufficiently severe non-exertional limitation that prohibited the ALJ's reliance on the grids without the assistance of a vocational expert"). In contrast, the ALJ here explicitly found that plaintiff's impairments caused a mild to moderate limitation in concentration, persistence, or pace. [AR at 33.] Thus, Hoopai does not address the issue of whether the ALJ was required to include his own finding of mild to moderate limitations in his assessment of plaintiff's RFC and whether, as argued by defendant [JS at 9-17], a limitation to simple and repetitive tasks incorporates such a finding.

Where the medical testimony does not establish any specific *restrictions* based on a claimant's difficulty with concentration, persistence, or pace, or social functioning, the ALJ does not err in adopting the physician's limitation to simple tasks. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008) (physician identified claimant as having "slow pace, both in thinking & actions," but found she was still able to "carry-out simple tasks"). In Stubbs-Danielson, the ALJ "translated" the physician's conclusions regarding pace and mental limitations into a restriction to "simple tasks," and the Ninth Circuit found that the ALJ's assessment of the claimant's concentration, persistence, or pace adequately incorporated the claimant's restrictions. Id.; see also Lee v. Colvin, 80 F. Supp. 3d 1137, 1151 (D. Or. 2015) (noting that the medical evidence in Stubbs-Danielson did not establish any specific *restrictions* based on difficulty with concentration, persistence, or pace). Here, however, unlike in Stubbs-Danielson, although he gave significant weight to the opinions of Dr. Campbell and Dr. Varghese, the ALJ made an explicit finding that plaintiff had *mild to moderate* difficulties in concentration, persistence, or pace, notwithstanding these doctors' findings of *lesser* limitations. [AR at 33 (see also AR at 37, 438, 440).] Thus, unlike in Stubbs-Danielson, the ALJ's specific finding of *mild to moderate* limitations in concentration, persistence, and pace, was not consistent with the medical testimony.

In a published decision, one district court in the Ninth Circuit recently found that a restriction to simple and repetitive tasks does not adequately incorporate moderate limitations in

1 concentration, persistence, or pace found at step two. Lee, 80 F. Supp. 3d at 1151. In other unpublished opinions, the Ninth Circuit has held that when an ALJ finds a moderate limitation in concentration, persistence or pace, he must include that limitation in a claimant's RFC. See Lubin v. Comm'r of Soc. Sec. Admin., 507 F. App'x 709, 712 (9th Cir. 2013) (clarifying that limiting a claimant to one to three step tasks did not capture a concentration, persistence or pace deficiency); Williamson v. Comm'r of Soc. Sec., 438 F. App'x 609, 611 (9th Cir. 2011). Similarly, as noted by the Ninth Circuit in Brink v. Comm'r Soc. Sec. Admin., 343 F. App'x 211 (9th Cir. 2009) -- a case relied on by the district court in Lee -- although the ALJ had accepted the claimant's moderate restrictions as to concentration, persistence, and pace, the ALJ failed to address these specific restrictions in the claimant's RFC and in his hypothetical questions, suggesting only a restriction to "simple, repetitive work." Brink, 343 F. App'x at 212. The Ninth Circuit found that this restriction did not adequately capture the claimant's moderate restrictions as to concentration, persistence, or pace because the repetitive assembly-line work addressed by the vocational expert might also require extensive focus and speed. Id.; see also Lubin, 507 F. App'x at 712 (finding the ALJ erred by accepting that the claimant had limitations as to concentration, persistence, or pace and then failing to include such limitations in the RFC and the hypothetical questions to the vocational expert, which only limited the claimant to one- to three-step tasks); Newton v. Chafer, 92 F.3d 688, 695 (8th Cir. 1996) (holding a limitation to simple jobs did not adequately represent a deficiency in concentration, persistence or pace) (cited with approval in Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002)); Craft v. Astrue, 539 F.3d 668, 678 (7th Cir. 2008) (finding that the ALJ failed to provide an "accurate and logical bridge" between the medical testimony regarding mental limitations and the restriction to unskilled work).

Here, the ALJ failed to provide an explanation as to how a restriction to simple and repetitive unskilled work accounted for a mild to moderate limitation in concentration, persistence, or pace. Thus, it was error for the ALJ to fail to include plaintiff's mild to moderate difficulties in concentration, persistence, or pace in the RFC. Remand is also warranted on this issue.

/

/

14

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall reassess plaintiff's RFC in light of her "mild to moderate" impairment in concentration, persistence, and pace. Second, the ALJ shall review the medical evidence of record relating to plaintiff's mental health, including, but not limited to, the reports of Dr. Campbell [AR at 414-18], Dr. Varghese [AR at 424-41], Dr. Weiss [AR at 447], and Dr. Shillito [AR at 480-81], and consider the effect, if any, of plaintiff's assessed difficulties in interacting with supervisors, coworkers, or the general public, or of plaintiff's difficulties in withstanding the stress and changes associated with an eight-hour workday and day-to-day work activities, on plaintiff's RFC. If the ALJ rejects these findings, the ALJ shall explain why significant and probative evidence was rejected. Finally, with the assistance of a vocational expert, if necessary, the ALJ shall determine whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform given her RFC, including her mild to moderate difficulties in concentration, persistence, and pace, and any limitations in social functioning.[12]

---

[12] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

15

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: December 4, 2015

_/s/ Paul L. Abrams_
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE